UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHON CERVI,

        Petitioner,

                              CASE NO. 2:11-CV-10692

v.                            JUDGE VICTORIA A. ROBERTS
                              MAGISTRATE JUDGE PAUL J. KOMIVES

RICHARD McKEON,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.    *Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.    *Jury Instructions/Right to Present a Defense* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    F.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    G.    *Sex Offender Registration* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . 23
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a

certificate of appealability.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner Jonathan Cervi is a former state probationer, who appears now to have been discharged from his sentence but who, at the time he filed this petition, was serving his term of probation.

2.    Petitioner was charged in state court with two counts of using the internet to commit or attempt to commit third degree criminal sexual conduct, MICH. COMP. LAWS §§ 750.145d(1)(a), 750.520d(1)(a) (Counts I and II), and one count of using a computer to communicate with a perceived minor to produce or attempt to produce child sexually abusive material, MICH. COMP. LAWS §§ 750.145c(2) (Count III).[1]  The district court bound petitioner over on only Count I, concluding that two contacts as part of the same course of conduct did not warrant two separate § 750.145d charges, and that the § 750.145c charge was not supported by probable cause.  In separate proceedings, the circuit court denied both petitioner's motion for dismissal of Count I, the prosecutor's motion to reinstate Counts II and III, and petitioner's motion to suppress instant message transcripts.  The circuit court granted petitioner's motion to suppress photographic evidence.  The matter was then stayed in the trial court so that the parties could pursue interlocutory appeals.

3.    Petitioner filed an application for leave to file an interlocutory appeal in the Michigan Court of Appeals, raising two claims:

I.    USING THE INTERNET FOR THE PURPOSE OF ATTEMPTING TO COMMIT CSC 3RD WITH A MINOR REQUIRES ADDITIONAL PROOF OF SEXUAL PENETRATION OR PROOF THAT DEFENDANT TOOK

---

[1]Petitioner was originally charged with one count under § 750.145d.  Petitioner pleaded guilty to this charge and was sentenced to a term of 6 months' incarceration in the Wayne County Jail, plus a term of probation.  Petitioner subsequently moved to withdraw his plea, a motion which the trial court granted.  The prosecutor then dismissed the pending charges and reissued the criminal complaint.

A SUBSTANTIAL, <u>UNEQUIVOCAL</u> OVERT STEP TO ACCOMPLISH THE PENETRATION.  THE DEPUTY TESTIFIED THAT DEFENDANT DROVE INTO THE DRIVEWAY, TURNED AROUND AND ATTEMPTED TO LEAVE.  DID THE COURT ERR IN DENYING THE MOTION TO QUASH FINDING THAT THE DEFENDANT'S ATTEMPT TO LEAVE CREATED A QUESTION OF FACT FOR THE JURY?

II.   MRE 1002 PROVIDES THAT "TO PROVE CONTENT, THE ORIGINAL WRITING, [OR] RECORDING, IS REQUIRED."  UNDER MRE 1001, "DATE STORED IN A COMPUTER, PRINTOUT OR OTHER OUTPUT READABLE BY SIGHT, SHOWN TO REFLECT THE DATA <u>ACCURATELY</u>, IS AN 'ORIGINAL.'" WHERE THE PRINTOUT OF THE INSTANT MESSAGES TRANSMITTED BETWEEN THE DEFENDANT AND DEPUTY GIBSON WAS CONCEDED TO BE INCOMPLETE BECAUSE OF A GLITCH IN THE YAHOO PROGRAM, DID THE COURT ABUSE HER DISCRETION IN DENYING DEFENDANT'S 702 MOTION?

The court of appeals denied petitioner's application for leave to appeal in a standard order, based on petitioner's "failure to persuade the Court of the need for immediate appellate review."  *People v. Cervi*, No. 262314 (Mich. Ct. App. June 29, 2005).  Petitioner did not appeal this denial to the Michigan Supreme Court.

4.     Meanwhile, the prosecution filed its own application for leave to file an interlocutory appeal, raising three issues:

I.   MCL 750.145d PROHIBITS A PERSON FROM USING THE INTERNET OR A COMPUTER TO COMMUNICATE WITH ANOTHER PERSON FOR THE PURPOSE OF COMMITTING OR ATTEMPTING TO COMMIT CONDUCT INVOLVING SEXUAL PENETRATION OF A MINOR BETWEEN 13 AND 16 YEARS OF AGE.  HERE, DEFENDANT, BY COMMUNICATING THROUGH AN ON-LINE CHATROOM, ARRANGED TO MEET A PERSON HE BELIEVED TO BE A 14 YEAR OLD GIRL FOR SEXUAL INTERCOURSE.  THERE WAS PROBABLE CAUSE THAT DEFENDANT VIOLATED THE STATUTE AS SOON AS HE MADE HIS COMMUNICATION FOR THE REQUIRED PURPOSE.

II.   MCL 750.145d PROHIBITS A PERSON FROM USING THE INTERNET OR A COMPUTER TO COMMUNICATE WITH ANOTHER PERSON FOR THE PURPOSE OF COMMITTING OR ATTEMPTING TO

3

COMMIT CONDUCT INVOLVING ATTEMPTING, PREPARING, OR CONSPIRING TO ARRANGE FOR THE PRODUCTION OR MAKING OF A VIDEOTAPE OF A CHILD ENGAGING IN SEXUAL INTERCOURSE. HERE, DEFENDANT, BY COMMUNICATING THROUGH AN ON-LINE CHATROOM, ARRANGED TO MEET A PERSON HE BELIEVED TO BE A 14 YEAR OLD GIRL FOR THE PURPOSE OF PREPARING A VIDEOTAPE [OF] HER PERFORMING ORAL SEX. THERE WAS PROBABLE CAUSE THAT DEFENDANT VIOLATED THE STATUTE ONCE HE MADE HIS COMMUNICATION FOR THE REQUIRED PURPOSE.

III.   RELEVANT EVIDENCE MAY BE EXCLUDED IF ITS PROBATIVE VALUE IS "SUBSTANTIALLY OUTWEIGHED" BY THE DANGER OF UNFAIR PREJUDICE. HERE, WHILE DEFENDANT WAS SPEAKING ON-LINE TO A PERSON HE BELIEVED TO BE A 14 YEAR OLD GIRL AND ARRANGING A MEETING TO HAVE SEX WITH THAT CHILD, DEFENDANT SENT THE PERSON A PHOTOGRAPH OF HIS EXPOSED PENIS. THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING THE PHOTOGRAPH BECAUSE IT WAS "MORE PREJUDICIAL THAN PROBATIVE."

The court of appeals granted the prosecution's application for leave to appeal. After briefing and argument, the court of appeals reversed the trial court's dismissal of Counts II and III. The court concluded that each violation of § 750.145d could be charged separately, and that the charges did not violate petitioner's First Amendment free speech rights. The Court also concluded that the prosecution presented sufficient evidence to establish probable cause that petitioner violated § 750.145c. The court of appeals affirmed, however, the trial court's decision to exclude the photographic evidence. *See People v. Cervi*, 270 Mich. App. 603, 717 N.W.2d 356 (2006) (*Cervi I*). Neither party appealed the court of appeals's decision to the Michigan Supreme Court.

5.   Following remand from the court of appeals, the trial court granted petitioner's motion for a jury instruction on the defense of abandonment. The prosecution filed an application for leave to file an interlocutory appeal, asserting that a crime is complete under § 750.145d once the internet communication occurs, with no further overt act required, and thus abandonment is not

4

an appropriate defense. In lieu of granting the prosecutor's application, the court of appeals summarily reversed, explaining that its prior decision established that "the prosecution need not prove beyond a reasonable doubt either the elements of a crime of criminal sexual conduct or an attempt to commit criminal sexual conduct," and therefore voluntary abandonment, which is a defense to an attempt crime, could not be raised by petitioner at trial. *People v. Cervi*, No. 276927 (Mich. Ct. App. July 23, 2007) (*Cervi II*).

6.     Petitioner filed an application for leave to appeal this decision in the Michigan Supreme Court. The Supreme Court denied petitioner's application in a standard order. *See People v. Cervi*, 480 Mich. 1002, 742 N.W.2d 353 (2007).

7.     On March 5, 2009, petitioner was convicted of one of the § 750.145d counts, and was acquitted on the remaining two counts, following a six day jury trial in the Wayne County Circuit Court. On May 14, 2009, he was sentenced to a term of two years' probation and ordered to register as a sex offender. Petitioner's obligation to register was stayed pending further appeal.

8.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A REASONABLE TRIER OF FACT IN FINDING GUILT BEYOND A REASONABLE DOUBT.

II.    IT WAS ERROR TO REQUIRE SEX OFFENDER REGISTRY WHERE APPELLANT'S CONVICTION, BY ITS NATURE, DOES NOT CONSTITUTE A SEXUAL OFFENSE AGAINST AN INDIVIDUAL WHO IS LESS THAN 18 YEARS OF AGE AND WHERE AT THE TIME OF SENTENCING, NEARLY SIX YEARS AFTER THE OFFENSE, THE COURT WAS SATISFIED THAT APPELLANT DOES NOT POSE A POTENTIAL SERIOUS MENACE AND DANGER TO THE HEALTH, SAFETY, MORALS, AND WELFARE OF THE PEOPLE AND PARTICULARLY THE CHILDREN OF THIS STATE.

5

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Cervi*, No. 292600, 2010 WL 2793549 (Mich. Ct. App. July 15, 2010) (per curiam) (*Cervi III*).

9.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Cervi*, 488 Mich. 950, 790 N.W.2d 680 (2010).

10.     Petitioner, through counsel, filed the instant application for a writ of habeas corpus on February 21, 2011. As grounds for the writ of habeas corpus, he raises a claim that he was denied his rights to a fair trial and to present a defense when he was denied instructions on attempt and the defense of abandonment, as well as the two claims that he raised on direct appeal following his conviction.

11.     Respondent filed his answer on August 29, 2011. He contends that petitioner's claims are without merit or are not cognizable on habeas review.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from an undercover operation in which he communicated with a Wayne County Sheriff's Deputy posing as a 14-year-old girl. The evidence adduced at trial was accurately summarized in the prosecutor's brief on petitioner's direct appeal following his conviction:

> On July 1, 2003, Wayne county Deputy Norman Gibson was working with the Internet Crime Unit. Part of his duties was to portray a minor and take part in public internet chatrooms. Gibson would log online into the Yahoo Instant Messaging program under the screen name Inozentangel and wait for someone to strike up a conversation with him. Another person, with the screen name Timmyd683, contacted Inozentangel. Timmyd683 indicated that he was a 21 year-old male from Livonia and Inozentangel identified herself as a 14 year-old female from Livonia. Timmyd683 asked Inozentangel to e-mail him a photograph and

provided the e-mail address cerv2510@yahoo.com.  Inozentangel sent a photograph of a female undercover officer taken when she was 14 years-old.  In return, Timmyd683 sent Inozentangel a photograph of a while male and another photograph of a male's midsection with his pants down and his hand on his penis.  The conversation continued with Timmyd683 asking about Inozentangel's bra size and whether she was looking for a relationship, either intimate or casual.  Inozentangel responded that she was looking for anything.  Timmyd683 responded, "f*** buddy?"  Timmyd683 asked Inozentangel if she was a sexual girl and then asked if she wanted to meet.  Inozentangel responded that she would and asked what he wanted to do.  Timmyd683 asked if Inozentangel could sneak out later and meet somewhere private.  Timmyd683 asked Inozentangel, "Would you go down on me?"  Inozentangel said sure and then asked what he meant by "go down."  Timmyd683 clarified that he meant a blow job or fellatio.  Timmyd683 indicated that they could meet and find a spot where they could get sexual but did not want to get rejected or find out that Inozentangel was going to get him arrested.  Inozentangel asked why would she have him arrested.  Timmyd683 responded that it was illegal.  Timmyd683 asked when the could meet and Inozentangel responded at about 9 or 10 p.m.  Timmyd683 asked if she could sneak out later than that.  Inozentangel responded that she could not that night, but could the next night.  Timmyd683 responded that he had a baseball game so he could only meet late that night and he was going on vacation so he could not meet the next night.  Timmyd683 told Inozentangel that she was cute and wished she could sneak out later that night to meet.  Inozentangel responded that Timmyd683 would have to wait until after his vacation.  The conversation ended for that night.

On July 2, 2003, Timmyd683 contacted Inozentangel again.  Timmyd683 wrote that his vacation had been delayed.  Timmyd683 asked Inozentangel if he could meet her.  Timmyd683 asked Inozentangel if she had sex with many other men that she met online.  Timmyd683 also asked if Inozentangel wanted him to give her anything.  Inozentangel answered that if he did it would be like he was giving her something to give him oral sex, like a prostitute.  Inozentangel quickly followed with a message that she was kidding and that she needed a webcam.  Timmyd683 responded that he meant whether he could do anything for her sexually.  Timmyd683 asked if he could meet with Inozentangel later that night for what they talked about the last time they spoke.  Inozentangel referred to the fellatio and asked if there was anything else she could do.  Timmyd683 and Inozentangel agreed to meet at a middle school at approximately 11:30 p.m.  Inozentangel said she would be outside wearing a sweatshirt and shorts.  Timmyd683 sent another photograph of his face so Inozentangel would recognize him.  Inozentangel sent Timmyd683 additional pictures of a fourteen year-old girl.  Timmyd683 asked for Inozentangel to be online around 11:00 p.m. to finalize the plans for the meeting.  The conversation then ended for that time.

Inozentangel later sent Timmyd683 a message saying she could not make the meeting.  Timmyd683 asked Inozentangel to sneak out, but she responded that she could not.  The conversation ended for the night.

On July 3, 2003, Timmyd683 contacted Inozentangel again.  Inozentangel

told Timmyd683 that she was going to spend the night at her father's house in Grosse Pointe so she could not meet him. On July 6, 2003, Timmyd683, using the screen name cerv25, again contacted Inozentangel. Timmyd683 asked when Inozentangel would return home from her father's house. Inozentangel responded that she was still at his house, but that she would return home the next morning. Timmyd683 asked Inozentangel to be online the next day. Later that night, Timmyd683 left Inozentangel a message saying that he was in Grosse Pointe and asking if she could sneak out that night.

On July 7, 2003, Inozentangel contacted Timmyd683 through the cerv25 screen name. Inozentangel told Timmyd683 that she might have to stay in Grosse Pointe one more night but she knew she could sneak out that night. Inozentangel and Timmyd683 agreed to meet at Grosse Pointe North High School. Timmyd683 asked if he could videotape Inozentangel performing fellatio on him and then him ejaculating on her face. Timmyd683 asked if they could meet in a field because there was not enough room in his car for him to ejaculate like he wanted. Timmyd683 told Inozentangel that he drove a Ford Explorer. Inozentangel told Timmyd683 that if he wanted to do more than just receive fellatio then he would need to bring condoms. Inozentangel gave Timmyd683 the address for the school and made him promise that he would not show the video to anyone. Timmyd683 asked Inozentangel how she liked her men and whether any of her previous partners had a large penis. Timmyd683 and Inozentangel agreed to meet and then drive somewhere so Inozentangel could perform fellatio on him. Inozentangel told Timmyd683 that her name was Whitney Thompson. Timmyd683 said that his last name was Cerivanksky.

Later, Timmyd683 contacted Inozentangel to finalize the plans for their meeting. Timmyd683 said that he wanted Inozentangel to call him before he drove out to Grosse Pointe. Inozentangel refused to give her phone number. Inozentangel told Timmyd683 that she would meet him in the parking lot of the school. Timmyd683 agreed to meet Inozentangel at 12:30 a.m. and the conversation ended.

Gibson and his partner, Corporal Erin Diamond, drove to Grosse Pointe North High School and parked near the baseball field. Another two officers, P.O. Liczbinsky and Ray Johnson, waited near the school and watched for Timmyd683's Explorer. Another officer, Sgt. Donahue, was in a marked vehicle nearby. The officers saw a Ford Explorer turn into the driveway of the school parking lot. The driveway was the only ingress to the parking lot. The Explorer entered the parking lot and Gibson turned on his lights and drove toward it. The Explorer tried to leave the parking lot, but the driveway was blocked by Sgt. Donahue's vehicle. The officers asked the driver of the Explorer, defendant, Jonathan Cervi, to exit the vehicle. Defendant was the same person shown in the photograph sent to Inozentangel on July 2, 2003. Inside defendant's vehicle, the officers found a Yahoo Map giving directions to Grosse Pointe North High School. The officers did not find a towel or a video camera in the vehicle.

The officers arrested defendant and conveyed him to the Sheriff's Department. Gibson read defendant his *Miranda* rights. Defendant waived his rights

8

and agreed to make a statement.  Defendant said that he was at the school to meet someone from the internet.  The person he was going to meet was 14 or 15 years old.  Defendant said he was meeting the person to get a blow job.  Defendant indicated that he was going to videotape the encounter but he denied having a video camera.  Defendant acknowledged that he used the screen names of Timmyd683 and Cerv25.  Defendant indicated that he was communicating with Inozentangel who he believed was named Whitney.   But, defendant now understood that he was actually communicating with a sheriff deputy.  Gibson showed defendant a printout of the July 1, 2003 through July 6, 2003 web conversations between him and Inozentangel as well as the e-mails that where sent between the two accounts.  Gibson had not printed the conversations that occurred on July 7, 2003 by the time he spoke to defendant.  Defendant reviewed the e-mails and conversations and initialed the pages of the printouts to acknowledge their accuracy.  Defendant did not tell the officers that he did not plan to have sex with Inozentangel or that he had changed his mind about meeting her.

A forensic search of defendant's computer following his arrest revealed remnants of the Inozentangel screen name but did not locate the remnants of the on-line conversations.  In December, 2008, Cpl. Diamond conducted a second search of defendant's computer, using more advanced software.  The screen name Cerv25 had been used several times.  Diamond searched the files on the computer for a term commonly involved in child pornography cases: Lolita.  Diamond discovered that, while Inozentangel and Cerv25 were chatting on July 7, 2003, a user of defendant's computer was browsing the website www.Lolitampegs.com.  The search also found that, on July 7, 2003 at 11:36 p.m., a user of the computer searched for directions to Grosse Pointe North High School.  A user of the computer had also browsed the Yahoo profile of Inozentangel.  A user of the computer had searched for "Whitney" and had visited the website for Grosse Pointe North High School.  A user, signed into Yahoo as Timmyd683, searched the internet for the surname "Thompson" in Livonia.  Diamond found in a file on the computer a copy of a photograph of defendant that Timmyd683 had sent to Inozentangel.  Copies of the photographs Inozentangel sent Timmyd683 were also found on the computer.  The computer contained a record of a connection on July 6, 2003 between the Yahoo Messenger accounts of Inozentangel and Cerv25.

* * * *

Defendant's mother, Suzanne Cervi, testified on defendant's behalf.  Mrs. Cervi testified that the family owned a computer in 2003 that was accessible by everyone in the house.  Mrs. Cervi believed her son to be a truthful person with normal sexual inclinations.  Defendant's father, Arthur Cervi, also testified on defendant's behalf.  Mr. Cervi testified that defendant's friends often used the family's computer.  Mr. Cervi recalled seeing two messages on the computer from an account containing the word "angel."  Mr. Cervi did not recall the content of the messages.  Mr. Cervi believed that his son had a good reputation for being honest and that he did not exhibit any unusual sexual tendencies.

Defendant testified on his own behalf.  Defendant testified that, in July, 2003,

9

he was living with his parents and using their computer.  On July 1, 2003, defendant logged into a romantic, adults-only, Yahoo chat-room.  Defendant testified that he logged into the chat-room in order to have cybersex where he would have erotic conversations with another person.   While in the chat-room, defendant began communicating with the screen name Inozentangel.  Initially, defendant believed the other person to be eighteen-years old but he learned later that she was not.  Defendant had sexually explicit conversations with Inozentangel that built up to defendant expressing an interest in meeting her.  But, defendant denied any intent of actually having sexual contact with her.  Defendant attempted to arrange a meeting with Inozentangel on July 1, 2003 or July 2, 2003 but the meeting was cancelled.  Defendant did not take a webcam, condoms, or a towel to the arranged meeting in Grosse Pointe because he did not think anything was going to happen.  Defendant testified that he drove to Grosse Pointe out of curiosity about Inozentangel.  Defendant testified that he drove into the entrance of the high school but did not turn into the parking lot.  Instead, defendant continued through a bus turn-around and started to leave.  Before defendant could exit from the school's entrance, the police stopped and arrested him.  Defendant was asked by the officers why he went to the school and defendant testified that he remained silent.  Defendant testified that it was Gibson that said that defendant was looking to get a blowjob.  Gibson also said that defendant seemed like a good kid that just got caught up in the situation.  Gibson's comment won defendant's confidence.  Defendant testified that his intent for going into the chat-room and communicating with Inozentangel was not to have sex with a minor.  Defendant testified that he was not interested in child pornography, had never been to a child pornography website, and was certain that the Lolitampegs website was not a child pornography website.

On cross-examination, defendant admitted that the transcript of the conversations he had with Inozentangel seemed accurate.  Defendant also admitted that when he discovered that Inozentangel was purportedly fourteen-years old, he continued the sexually explicit conversation.  Defendant knew that it was wrong to have a sexual conversation with a minor but he continued with the conversation anyway.  During that conversation, defendant initiated the topics of oral sex and ejaculating on Inozentangel's face.   During the several days of conversations, defendant had approximately four opportunities to end the communication but defendant continued.  Defendant went to Grosse Pointe because he felt sucked in by the conversations he was having with Inozentangel and was curious about her.  Defendant testified that he was engrossed by how someone was agreeing to do all the things he was typing.  Defendant testified that, after driving 35 to 40 minutes to Grosse Pointe, his intent was simply to see if Inozentangel was there.  Defendant testified that he did not intent to stop and meet Inozentangel or have sex with her.  Defendant testified that, when he arrived at the high school, he did not even look into the parking lot to see if Inozentangel was there.

Pl.-Appellee's Br. on App., in *People v. Cervi*, No. 292600 (Mich. Ct. App.), at 2-7, 11-14 (citations

to trial transcript omitted); *see also*, Def.-Appellant's Br. on App., at 2-4.

C.    *Jurisdiction*

Before proceeding to the merits of petitioner's claims, I note that this Court retains

jurisdiction to adjudicate the petition despite the fact that petitioner was not incarcerated and his

sentence has been discharged since the filing of his habeas application.  "The federal habeas statute

gives the United States district courts jurisdiction to entertain petitions for habeas relief only from

persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'"

*Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis

supplied by Court); *see also*, 28 U.S.C. § 2254(a).  This requires "that the habeas petitioner be 'in

custody' *under the conviction or sentence under attack* at the time his petition is filed."  *Maleng*,

490 U.S. at 490; *see also, Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  Petitioner was "in

custody" at the time he filed his application because a person serving a term of probation is

considered "in custody" for purposes of habeas corpus.  *See Lee v. Rios*, 360 Fed. Appx. 625, 628

n.2 (6th Cir. 2010).  Further, jurisdiction is not defeated by a petitioner's discharge from custody

where the petitioner is in custody at the time the petition is filed.  *See Carafas*, 391 U.S. at 238; *York

v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988).  Accordingly, the Court has jurisdiction over petitioner's

habeas application.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

12

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Jury Instructions/Right to Present a Defense*

Petitioner contends that he was denied a fair trial and his right to present a defense by the trial court's failure to give instructions on attempt and voluntary abandonment.  The Court should

13

conclude that petitioner is not entitled to habeas relief on this claim.

    1.    *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

    2.    *Analysis*

Petitioner cannot show that he was denied a fair trial or his right to present a defense by the trial court's failure to give instructions on attempt and voluntary abandonment because these instructions were not warranted under state law.  It is well established that a court's failure to give an instruction on a defense theory of the case "does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an

instruction." *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988); *see also*, *Gimotty v. Elo*, 40 Fed.

Appx. 29, 33-34 (6th Cir. 2002). Under Michigan law, a defendant is entitled to instruction on a

defense theory of the case where the instruction is supported by the evidence presented at trial. *See*

*People v. Mills*, 450 Mich. 61, 81, 537 N.W.2d 909, 919-20 (1995).

Here, on interlocutory appeal the Michigan Court of Appeals determined that the Michigan

general attempt statute is inapplicable to § 750.145d, because the statute itself punishes using a

computer either "for the purpose of . . . attempting to commit" CSC-III with a minor. *See Cervi I*,

270 Mich. App. at 618-19, 717 N.W.2d at 365-66. In the second interlocutory appeal, the court of

appeals summarily reversed the trial court's ruling that attempt and abandonment instructions would

be given, explaining:

> As clearly delineated in this Court's [prior opinion], the prosecution need not prove
> beyond a reasonable doubt either the elements of a crime of criminal sexual conduct
> or an attempt to commit criminal sexual conduct. Further, defendant may not raise
> the defense of abandonment at trial. "[V]oluntary abandonment is an affirmative
> defense to a prosecution for criminal attempt." *People v. Kimball*, 109 Mich App
> 273, 286; 311 NW2d 343 (1981). Defendant here has not been charged with a
> criminal attempt.

*Cervi II*, at 1. On direct appeal following petitioner's conviction the court further explained, in

rejecting petitioner's sufficiency of the evidence claim, that the court had previously "rejected

[petitioner's] argument that the prosecution was required to present evidence of an overt act on

defendant's part that he actually attempted to sexually penetrate a minor. . . . Therefore, the crime

was completed when the circumstance met the three elements [of the offense]," *Cervi III*, 2010 WL

2793549, at *2, namely "(1) use of the Internet or a computer, (2) intent to attempt to commit

conduct proscribed by § 520d (sexual penetration of a person between the ages of 13 and 16), and

(3) belief that the intended victim is a minor." *Id.*

15

In other words, as a matter of Michigan law the prosecution was required to show only that petitioner *intended* to attempt to commit CSC-III at the time he used the Internet or computer; if he did so, the crime set forth in § 750.145d was complete at that time. The prosecution was not required to further show that he attempted to actually commit a CSC-III. While his actions after using the Internet to facilitate his communications may be relevant to show whether or not he had the requisite intent, they are not themselves part of the crime, and thus his "abandonment" of those actions does not provide a defense to § 750.145d. Put more succinctly, "voluntary abandonment was not an available defense in this case because [petitioner] was charged with a completed crime versus an attempt." *People v. Hernandez-Perez*, No. 273050, 2008 WL 161108, at *3 (Mich. Ct. App. Jan. 17, 2008) (per curiam); *see also*, *People v. Beavers*, No. 264178, 2006 WL 3371779, at *3 (Mich. Ct. App. Nov. 21, 2006) (per curiam); *People v. Green*, No. 250436, 2005 WL 362496, at *3 (Mich. Ct. App. Feb. 15, 2005) (per curiam). It is well established that "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). The "federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Id*. Because, as defined by state law, petitioner's offense was completed when he used the Internet with the intent to attempt to commit a CSC-III and required no further showing of an actual attempt to commit CSC-III, he was not entitled to attempt and abandonment instructions as a matter of state law, and thus he cannot show that he was denied a fair trial or his right to present a defense by the absence of such instructions. *See Cunningham v. Berghuis*, No. 5:08-cv-14283, 2010 WL 3702547, at *9-*10 (E.D. Mich. July 19, 2010) (Komives,

16

M.J.), *report adopted*, 2010 WL 3702544 (E.D. Mich. Sept. 16, 2010) (O'Meara, J.); *Scales v. Jackson*, No. 05-CV-74914, 2008 WL 4792680, at *10 (E.D. Mich. Oct. 27, 2008) (Edmunds, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Sufficiency of the Evidence*

Petitioner next contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997),

17

*vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). With respect to the crime for which petitioner was convicted, the elements of the offense are: "(1) use of the Internet or a computer, (2) intent to attempt to commit conduct prescribed by § 520d (sexual penetration of a person between the ages of 13 and 16), and (3) belief that the intended victim is a minor." *Cervi I*, 270 Mich. App. at 617, 717 N.W.2d at 365. Further, the intent required by element (2) is a specific intent: "the defendant must communicate via the Internet with a person with the specific intent to commit or attempt the underlying offense." *Id*.

   2.    *Analysis*

Petitioner argues that the evidence was insufficient because there was no evidence presented that he committed or attempted to commit CSC-III. He argues that "[a]s 'proof of further identification' and 'evidence of intent', Inozentangel asked Timmyd683 to bring a webcam, towels and condoms. Petitioner went to the location with none of these items and never entered the lot, looping back around the driveway before reaching the agreed upon destination. Clearly Petitioner did not commit or attempt to commit third degree criminal sexual conduct." Pet'r's Br., at 11. The Michigan Court of Appeals rejected this claim, explaining:

18

Evidence was presented below establishing that defendant, over the course of several days, contacted an individual he believed to be a 14-year-old girl via chat room and instant messaging service, engaged in graphic sexual discussions, forwarded a picture of his penis, and made arrangements to meet for the purpose of receiving fellatio. Thus, the first and third elements were clearly satisfied. Moreover, the jury could reasonably infer from defendant's communications, including repeated requests that "Inozentangel" sneak out to meet him for sexual purposes, that the prosecution had proven the second element. Admittedly, defendant did testify that he never intended to have sex with a minor when he went onto the Internet. However, the jury's verdict indicates that it did not find this testimony credible. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of the witnesses." *People v. Kanaan*, 278 Mich.App. 594, 619, 751 N.W.2d 57 (2008).

Defendant points out that he did not bring a webcam, towels, or condoms with him to the proposed rendezvous and only entered the driveway rather than the parking lot where the meeting was to occur. This Court has already specifically rejected defendant's argument that the prosecution was required to present evidence of an overt act on defendant's part that he actually attempted to sexually penetrate a minor. Cervi I, 270 Mich.App. at 618-619, 717 N.W.2d 356. Therefore, the crime was completed when the circumstances met the three elements identified above. There was no need for the prosecution to prove that the defendant then took steps to accomplish the intended conduct proscribed by § 520d. Thus, the facts that defendant never entered the parking lot at the arranged meeting place and had not brought with him certain items that had been discussed in the online discussion have no bearing on whether there was sufficient evidence to support his conviction.

*Cervi III*, 2010 WL 2793549, at *2. This determination was reasonable.

The prosecution presented sufficient evidence to prove each element of the crime beyond a reasonable doubt. With respect to the first element, it was undisputed that petitioner communicated with Inozentangel via an Internet chatroom. Likewise, with respect to the third element, it was undisputed that petitioner believed Inozentangel to be 14 years old, and thus a minor. The only dispute at trial was over the second element, whether petitioner communicated with Inozentangel with the intent to commit or attempt to commit a CSC-III. Petitioner's intent need not be proven by direct evidence, but may be proven by circumstantial evidence. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998); *People v. Hoffman*, 225 Mich. App. 103, 111, 570 N.W.2d 146, 150 (1997).

Here, there was sufficient circumstantial evidence that petitioner intended to commit or attempt to commit CSC-III at the time he communicated with Inozentangel.  The evidence showed that petitioner conversed with Inozentangel on sexual matters, arranged several times to attempt to meet her for the purpose of receiving fellatio, attempted to verify her identity, and drove to a scheduled rendezvous where he had arranged for Inozentangel to meet him to perform fellatio.  Further, Deputy Gibson testified that petitioner admitted to him that he drove to the high school to receive fellatio from a 14 or 15 year old girl.  This testimony provided sufficient circumstantial evidence that petitioner intended to commit or attempt to commit a CSC-III with Inozentangel at the time he communicated with her to find the second element of the offense beyond a reasonable doubt.

This conclusion is not altered by the facts that petitioner testified he never intended to have sex with Inozentangel, never entered the parking lot, and did not bring items requested by Inozentangel.  It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995).  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996).  Further, that the evidence might equally support other, innocent,

inferences is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326.

Nor is this conclusion altered by petitioner's argument that the prosecution failed to present any evidence that he committed or attempted to commit a CSC-III. As noted above, the Michigan Court of Appeals concluded that § 750.145d does not require an actual attempt to commit a CSC-III. All that is required is the intent to either commit or attempt to commit a CSC-III at the time of the communication. As noted above, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson*, 432 U.S. at 211 n.12; *see also, Jackson*, 443 U.S. at 324 n.16; *Mullaney*, 421 U.S. at 691. Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991). As the Second Circuit explained, "*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Ponnapula*, 297 F.3d at 182. Because the prosecution presented sufficient evidence with respect to the elements of the offense as defined by Michigan law, the prosecution's failure to present evidence of an actual attempt to commit CSC-III, which is not an element, does not render the evidence insufficient. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

21

G.     *Sex Offender Registration*

Finally, petitioner contends that the trial court erred in requiring, as part of his sentence, that he register as a sex offender.  Petitioner contends that his offense was not a "listed offense" under the Sex Offenders Registry Act, and that registration did not serve the purposes of the act, which is to protect against the commission of future criminal sexual acts by convicted sex offenders.  The Court should conclude that this claim is not cognizable on habeas review.

"Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Therefore, federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).   Under the Michigan Sex Offender Registration Act (SORA), an individual convicted of a "listed offense" is required to register as a sex offender.  *See* MICH. COMP. LAWS § 28.723(1)(a).  At the time of petitioner's offense, § 750.145d was not a specifically listed offense.[2] However, the statute also provided a catch-all provision, defining as listed offenses any violation "'that by its nature constitutes a sexual offense against an individual who is less than 18 years of age.'" *Cervi III*, 2010 WL 2793549, at *3 (quoting MICH. COMP. LAWS § 28.722(e)(xi) as it existed prior to the 2011 amendments).  Pursuant to this catch-all provisions, the Michigan courts have concluded that § 750.145d is a "listed offense."  *See Cervi III*, 2010 WL 2793549, at *4; *People v. Meyers*, 250 Mich. App. 637, 646-50, 649 N.W.2d 123, 129-31 (2002), *overruled in part on other*

---

[2]The statute was significantly amended in 2011, and now provides that § 750.145d is a listed offense.  *See* MICH. COMP. LAWS § 28.722(u)(iv).

*grounds by People v. Lee*, 489 Mich. 289, 298 n.5, 803 N.W.2d 165, 169 n.5 (2011).  Further, with

respect to petitioner's second argument, nothing in SORA "allow[s] for discretional determinations

on the part of the trial court."  *Cervi III*, 2010 WL 2793549, at *4; *see also*, MICH. COMP. LAWS §

28.728c (setting forth "the sole means by which an individual may obtain judicial review of his or

her registration requirements under the act," § 28.728c(4)).  These state law determinations are

binding here, and provide no basis for habeas corpus relief.  Accordingly, the Court should conclude

that petitioner is not entitled to habeas relief on this claim.

H.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides

that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this

language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a

certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

*v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial

showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court agrees with the foregoing analysis, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As explained above, the Michigan Court of Appeals determined as a matter of state law that § 750.145d does not require a showing of the actual

commission or attempt to commit CSC-III, and thus that voluntary abandonment is not a defense to § 750.145d. Because it is clearly established that this Court is bound by these state law determinations, it follows that the resolutions of petitioner's jury instruction and sufficiency of the evidence claims, which are both premised on his argument that he did not actually attempt to commit CSC-III, are not reasonably debatable. Likewise, as explained above, it is not reasonably debatable that petitioner's SORA claim is a state law claim not cognizable on habeas review. Accordingly, the Court should deny petitioner a certificate of appealability.

I.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May, 11, 2012                        s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of this document was sent to parties of record on May 11, 2012 electronically and/or U.S. mail.

                                            s/Michael Williams
                                            Relief Case Manager for the Honorable
                                            Paul J. Komives